LAURA D. SMOLOWE (SBN 263012)
lsmolowe@akingump.com
COREY WHITT (SBN 356554)
cwhitt@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Tel: 310.229.1000
Fax: 310.229.1001

ASHLEY VINSON CRAWFORD (SBN 257246)
avcrawford@akingump.com
DANIELLE CROCKETT GINTY (SBN 261809)
dginty@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
100 Pine Street, Suite 3200
San Francisco, CA 94111
Tel: 415.765.9500
Fax: 415.765.9501

Attorneys for Defendant
FANTASIA TRADING LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

DAVID HSU AND ISHWINDER SINGH *individually and on behalf of all others similarly situated,*

Plaintiffs,

vs.

FANTASIA TRADING LLC,

Defendant.

Case No. 4:26-cv-01874-HSG

**DEFENDANT FANTASIA TRADING LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Date: October 1, 2026
Time: 2:00 p.m.
Location: Courtroom 2 – 4th Floor

Date Action Filed: March 4, 2026

# TABLE OF CONTENTS

Page


NOTICE OF MOTION AND MOTION (CIVIL L.R. 7-2(B)(2)) ... 1

STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ... 1

RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3)) ... 2

MEMORANDUM OF POINTS AND AUTHORITIES ... 2

I. INTRODUCTION ... 2

II. STATEMENT OF RELEVANT ALLEGATIONS ... 3

III. PLAINTIFFS FAIL TO PLEAD FACTS ESTABLISHING ARTICLE III STANDING ... 3

IV. ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY CONSENTED TO FANTASIA'S DATA PRACTICES ... 7

A. Plaintiffs Consented To Fantasia's Data Practices. ... 7

B. Fantasia's Disclosures Encompassed The Data Practices Plaintiffs Challenge. ... 9

V. PLAINTIFFS FAIL TO STATE A CLAIM UNDER ECPA OR CIPA (COUNTS 1-4) ... 10

A. Plaintiffs Do Not Allege Any Content Was Intercepted While In Transit. ... 10

B. Plaintiffs Do Not Allege Any "Confidential Communications" Under CIPA § 632. ... 12

C. Fantasia Was a Party and Consented to the Communications, And The "Crime-Tort Exception" Does Not Apply To Plaintiffs' ECPA Claim. ... 12

1. The BDTR Is Invalid ... 13

2. Fantasia's Alleged Conduct Is Exempt From The BDTR ... 17

3. Plaintiffs Fail To Plead Any Violation of the BDTR ... 17

D. Plaintiffs Do Not Allege A Viable CIPA Section 638.51 Claim. ... 19

VI. PLAINTIFFS FAIL TO ALLEGE INVASION OF PRIVACY OR INTRUSION UPON SECLUSION CLAIMS (COUNTS 6-7) ... 23

VII. PLAINTIFFS FAIL TO PLEAD A VIOLATION OF THE CDAFA (COUNT 8) ... 23

VIII. PLAINTIFFS FAIL TO ALLEGE ANY VIOLATION OF THE UCL OR CLRA (COUNTS 9-10) ... 24

IX. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT 5) ... 25

X. CONCLUSION ... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 25

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ... 25

*Aviles v. Liveramp, Inc.*, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) ... 21

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ... 6, 24

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 10

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024) ... 7, 8

*Camacho v. DG Premium Brands LLC*, No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025) ... 20

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) ... 8

*Casillas v. BOP LLC*, 2025 WL 2161288 (Cal. Super. Ct. June 18, 2025) ... 21

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ... 16

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ... 18

*City & Cnty. of San Francisco v. EPA*, 604 U.S. 334 (2025) ... 16

*Coal. of Concerned Cmtys., Inc. v. City of Los Angeles*, 34 Cal. 4th 733 (2004) ... 22

*Crano v. Sojern, Inc.*, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) ... 25

*D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026) ... 22

*Dawidzik v. Tesla, Inc.*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ... 19

*DeMille v. Am. Fed'n of Radio Artists*,
31 Cal. 2d 139 (1947) .......... 20

*Didrickson v. U.S. Dep't of Interior*,
982 F.2d 1332 (9th Cir. 1992) .......... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 6, 12

*First Nationwide Sav. v. Perry*,
11 Cal. App. 4th 1657 (1992) .......... *passim*

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 4

*Garcia v. Diversified Foodservice Supply, LLC*,
2025 WL 4474677 (Cal. Super. Ct. June 24, 2025) .......... 21, 22

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. Apr. 18, 2018) .......... 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 11, 12

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024), *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025) .......... 12

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) .......... 24

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 7, 10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 23

*Heiting v. HP Inc.*,
2025 WL 2993673 (Cal. Super. Ct. Aug. 1, 2025) .......... 22

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 23, 24

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 7

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 23

*Ji v. Naver Corp.*,
2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) .......... 5, 7, 19, 23

*Jones v. Corbis Corp.*,
815 F. Supp. 2d 1108 (C.D. Cal. 2011) .......... 9

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) ....................8

*Kalantari v. NITV, Inc.*,
352 F.3d 1202 (9th Cir. 2003) ....................15, 16

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................24

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....................5, 6, 7

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................6, 7

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................11

*Kisil v. Illuminate Educ., Inc.*,
2025 WL 2589000 (9th Cir. Sept. 8, 2025) ....................4

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................10, 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....................7

*Larkin v. Workers' Comp. Appeals Bd.*,
62 Cal. 4th 152 (2015) ....................20

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) ....................6

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)....................22

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....................13, 16

*Lopez v. Garland*,
116 F.4th 1032 (9th Cir. 2024) ....................16

*Lopez v. Wash. Mut. Bank, FA*,
302 F.3d 900 (9th Cir. 2002) ....................24

*Low v. LinkedIn Corp.*,
900 F. Supp 2d 1010 (N.D. Cal. 2012) ....................23

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026)....................5, 7, 19

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................11

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) ....................6

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ....................13

*Mendoza v. Fonseca McElroy Grinding Co.*,
11 Cal. 5th 1118 (2021) ....................19

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ....................11

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ....................22

*Monsalvo Velazquez v. Bondi*,
604 U.S. 712 (2025) ....................15

*Nyugen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................8

*Pac. Steel Grp. v. CMC Steel Fabricators, Inc.*,
2023 WL 6186679 (S.D. Cal. Mar. 10, 2023) ....................24

*People v. Blair*,
25 Cal. 3d 640 (1979) ....................21

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................... *passim*

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) ....................6

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................19

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................4, 5, 7, 23

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
551 U.S. 224 (2007) ....................15

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ....................5, 19

*Ramos v. Gap, Inc.*,
2025 WL 2144837 (N.D. Cal. July 29, 2025) ....................11

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979) ....................16

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................12

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ....................19

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................19

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ....................12

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ....................12, 18, 19

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ....................20

*Schallert v. Orkin LLC*,
2025 WL 4332757 (Cal. Super. Ct. Dec. 15, 2025) ....................20, 22

*United States ex rel. Schutte v. SuperValu Inc.*,
598 U.S. 739 (2023) ....................15

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................10

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................8

*In re Sony PS3 Other OS Litig.*,
551 F. App'x 916 (9th Cir. 2014) ....................25

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................4

*Thomas v. Papa John's Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) ....23

*Timothee v. Meta Platforms, Inc.*,
2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) ....................7

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................11, 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................4, 6

*Troyk v. Farmers Grp., Inc.*,
171 Cal. App. 4th 1305 (2009) ....................22

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) ....................16

*Tuolumne Jobs & Small Bus. All. v. Superior Ct.*,
59 Cal. 4th 1029 (2014) ....................22

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................22

*United States v. Gallegos*,
613 F.3d 1211 (9th Cir. 2010) ....................15

*United States v. Morel*,
922 F.3d 1 (1st Cir. 2019)....................22

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) ....................9

*In re USA Today Co.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ....................5, 6, 7, 19

*Variety Media, LLC v. Superior Court*,
No. B350578 (Cal. Ct. App.) ....................22

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) ....................19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................23

*Zadrozny v. Bank of N.Y. Mellon*,
720 F.3d 1163 (9th Cir. 2013) ....................25

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................11, 12

**Statutes**

5 U.S.C. § 706....................13

18 U.S.C. App. 3 §1....................15

18 U.S.C.
§ 2510....................10, 11
§ 2511....................7, 11, 12

50 U.S.C.
§ 1701....................13
§ 1702....................13, 15
§ 1703....................15
§ 1704....................15
§ 1708....................15

Cal. Bus. & Prof. Code
§ 17200....................2, 3, 7, 24
§ 17204....................7

Cal. Civ. Code
§ 1770 .......... 2, 3, 24, 25
§ 1780 .......... 7, 25
§ 1798.100 .......... 8, 21
§ 1798.120 .......... 8, 21
§ 1798.140 .......... 21

Cal. Penal Code
§ 502 .......... 23
§ 631 .......... *passim*
§ 632 .......... *passim*
§ 638.50 .......... 21
§ 638.51 .......... *passim*
§ 638.52 .......... 19, 20, 22
§ 638.53 .......... 19, 20, 22

**Federal Rules**

Fed. R. Civ. Proc.
8 .......... 25
9 .......... 24
12(b)(1) .......... 1, 2
12(b)(6) .......... 1, 2

**Other Authorities**

28 C.F.R.
§ 202.212 .......... 18
§ 202.226 .......... 16
§ 202.234 .......... 14, 17, 18
§ 202.243 .......... 14
§ 202.246 .......... 14
§ 202.301 .......... 14
§ 202.302 .......... 18
§ 202.401 .......... 14
§ 202.505 .......... 17

89 Fed. Reg. 15780 (Mar. 5, 2024) .......... 18

89 Fed. Reg. 86116 (Oct. 29, 2024) .......... 18

90 Fed. Reg. 1636-01 (Jan. 8, 2025) .......... 13, 17, 18

Pub. L. No. 100-418, 102 Stat. 1371 (1988) .......... 15

Pub. L. No. 103-236, 108 Stat. 474 (1994) .......... 16

Restatement (Second) of Torts .......... 7, 8, 9

*Information*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com (last accessed June 1, 2026) .......... 15

## NOTICE OF MOTION AND MOTION (CIVIL L.R. 7-2(B)(2))

**PLEASE TAKE NOTICE** that on October 1, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., Courtroom 2, 4th Floor, located at the United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Oakland, California 94612, Defendant Fantasia Trading, LLC ("Fantasia") will and hereby does move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice ("RJN"), the supporting Declaration of Alexis Liu ("Liu Decl.") and Declaration of Corey Whitt and the exhibits attached thereto, the Court's files, the arguments of counsel, and any other matter the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))

1. Should Plaintiffs' claims be dismissed for failure to allege Article III standing?

2. Should Plaintiffs' claims be dismissed because Plaintiffs consented to the alleged conduct?

3. Should the Electronic Communication Privacy Act ("ECPA") claim (Count 1) be dismissed because: (a) Plaintiffs fail to allege content was intercepted during transmission; and/or (b) Fantasia was a party and consented to the communications and Plaintiffs fail to plead any criminal or tortious purpose?

4. Should the California Invasion of Privacy Act ("CIPA") Section 631 claim (Count 2) be dismissed because: (a) Plaintiffs fail to allege any content was intercepted while in transit, and/or (b) Fantasia was a party to the communications?

5. Should the CIPA Section 632 claim (Count 3) be dismissed because: (a) Plaintiffs fail to identify any confidential communications, and/or (b) Fantasia was a party to the communications?

6. Should the CIPA Section 638.51 claim (Count 4) be dismissed because Section 638.51 does not apply to Fantasia's alleged data collection?

7. Should the unjust enrichment claim (Count 5) be dismissed because: (a) unjust enrichment is not a cause of action; (b) Plaintiffs have an adequate remedy at law, and/or do not identify any unfair or unlawful conduct; and/or (c) Fantasia retained no unjust benefit at Plaintiffs' expense?

8. Should the invasion of privacy and intrusion upon seclusion claims (Counts 6-7) be dismissed because Plaintiffs fail to allege: (a) they had a reasonable expectation of privacy in the data Fantasia

allegedly collected and/or (b) that Fantasia engaged in any highly offensive conduct?

9. Should the Comprehensive Computer Data Access and Fraud Act ("CDAFA") claim (Count 8) be dismissed because Plaintiffs fail to plead: (a) statutory standing and/or (b) that any data was taken from their computers?

10. Should the Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") claims (Counts 9-10) be dismissed because Plaintiffs fail to plead: (a) statutory standing and/or (b) any unlawful, unfair, or deceptive conduct?

## RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3))

The Court should dismiss the Complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs Hsu and Singh allege Fantasia violated multiple federal and state laws by using tracking technologies to collect their IP addresses, cookie data, and other similarly non-sensitive identifiers when they visited Fantasia's websites (the "Websites") to search for and ultimately purchase solar panels and a charger, respectively. Their claims should be dismissed with prejudice on multiple grounds.

First, Plaintiffs do not and cannot allege they suffered any "concrete" injury in fact sufficient to confer Article III standing.

Second, the Complaint and documents properly before the Court demonstrate Plaintiffs consented to the precise conduct about which they now complain.

Third, Plaintiffs' ECPA and CIPA claims should be dismissed because: (i) Plaintiffs do not allege Fantasia intercepted any content while in transit (required under ECPA and CIPA § 631); (ii) they do not allege any confidential communications (required under CIPA § 632); (iii) CIPA Section 638.51 does not apply to Fantasia's alleged data collection; (iv) Fantasia was a party and consented to the communications at issue; and (v) Plaintiffs' attempt to evade the one-party consent rule of ECPA by invoking the crime-tort exception fails because the Bulk Sensitive Data Transfer Rule ("BDTR" or the "Rule")[1] is invalid, Fantasia's alleged data transfer at issue here is exempt from the BDTR, and Plaintiffs

[1] The BDTR is entitled "Preventing Access to U.S. Sensitive Personal Data and Government-related Data by Countries of Concern or Covered Persons" and codified at 28 C.F.R. Part 202.

do not adequately plead facts showing any violation occurred or any other valid criminal or tortious purpose.

Finally, Plaintiffs' remaining claims fail for multiple reasons: (i) Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail because Plaintiffs do not plead they have a reasonable expectation of privacy in the data at issue here or Fantasia engaged in any highly offensive intrusion of their privacy; (ii) Plaintiffs' CDAFA, UCL, and CLRA claims fail because they do not plead facts sufficient to show statutory standing or essential elements of their claims; and (iii) unjust enrichment is not a cause of action and, even if it were, Plaintiffs have an adequate remedy at law and fail to allege Fantasia engaged in any unlawful conduct or retained any unjust benefit at their expense.

## II. STATEMENT OF RELEVANT ALLEGATIONS

Fantasia "is the U.S.-based operating subsidiary of Anker, a Chinese electronics manufacturer that focuses on smart devices used for entertainment, travel, and smart homes, and is centered around five key brands: Anker Solix, Anker, Soundcore, eufy, and Nebula." Compl. ¶ 27. Plaintiff Hsu alleges that in and before December 2025, he visited https://www.ankersolix.com to browse for products and, ultimately, to purchase portable solar panels. *Id.* ¶¶ 12, 84-86. Plaintiff Singh alleges that in and around early November 2025, he visited https://www.anker.com to browse for and, ultimately, to purchase an Anker Prime Charger. *Id.* ¶¶ 13, 91-93. Plaintiffs allege Fantasia installed certain "Tracking Technologies" on the Websites to "facilitate[] the interception and disclosure of [their] full-page context—including full-string URLs revealing the pages viewed and product viewed—and persistent identifiers—including IP addresses, advertising IDs, and cookie data—to third parties." *Id.* ¶¶ 12-13, 52-54. Plaintiffs allege that Fantasia uses such data for "its own purposes[,]" *id.* ¶¶ 14, 97, and transfers it to its Chinese parent company, Anker Innovations Technology Co., Ltd., in violation of the BDTR. *Id.* ¶¶ 8, 28, 97. Plaintiffs assert ten causes of action against Fantasia on behalf of themselves and a nationwide class, a nationwide use class, a California subclass, and a California purchaser subclass. *Id.* ¶¶ 103, 111-273.

## III. PLAINTIFFS FAIL TO PLEAD FACTS ESTABLISHING ARTICLE III STANDING

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "Where, as here, a case is at the pleading stage, a plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338.

Plaintiffs fail to plead facts demonstrating they have suffered any "concrete" injury in fact. A "concrete" injury is one that "actually exist[s]" or is "'real,' and not 'abstract.'" *Id*. at 340. Moreover, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341; *Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025) (there is "no distinction between 'procedural' and 'substantive' statutory provisions"; statutory standing alone is not enough). "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

Plaintiffs do not allege any harm sufficient to confer Article III standing. First, where, as here, Plaintiffs allege intangible harm, the relevant question is "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Popa*, 153 F.4th at 789 (quoting *TransUnion*, 594 U.S. at 424). Both common law and statutory claims based on alleged intangible harm from a privacy invasion must be "benchmarked" to one of four privacy torts recognized at common law: intrusion upon seclusion, appropriation of another person's name or likeness; publicity given to another person's private life; and publicity that places one in a false light. *Id.* at 792; *Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025).

*Popa* is instructive. There, the Ninth Circuit affirmed dismissal of a complaint for lack of standing in an action involving a Pennsylvania wiretapping statute and invasion of privacy and intrusion upon seclusion claims, asserting, much like Plaintiffs here, that the defendant's technology captured over 30 different categories of data and allowed it to intercept user's "electronic communications with the . . . website, including their mouse movements, clicks, keystrokes[,] URLs of web pages visited, and/or other electronic communications in real-time." *Popa*, 153 F.4th at 786. The court found the plaintiff lacked standing because she failed to allege the defendant's monitoring "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," but rather was "similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id*. at 791 (contrasting

defendants' alleged conduct with hypotheticals in Restatement (Second) of Torts § 625B cmt. a, such as taking intimate pictures through a window or publishing a photo of a nursing woman without consent).

Plaintiffs here likewise fail to identify any harm "that is remotely similar to those protected by [the common law privacy] torts." *Id.* at 792. They do not allege Fantasia collected any "embarrassing, invasive, or otherwise private information" *id.*, or that Fantasia's purported collection of their full-string URLs showing the pages and products they viewed on Fantasia's websites, IP addresses, advertising IDs, cookie data, device IDs, and/or browser metadata, *see* Compl. ¶¶ 12-13, 85, 89, 92, 96, caused them to experience a harm remotely similar to the "highly offensive" interferences or disclosures that were actionable at common law. *Popa*, 153 F.4th at 791. Thus, Plaintiffs fail to show an intangible injury sufficient to confer standing. *E.g.*, *id.*; *Ji v. Naver Corp.*, 2023 WL 6466211, at *4 (N.D. Cal. Oct. 3, 2023) (Gilliam, J.) (dismissing certain claims for lack of standing with prejudice, where plaintiffs failed to plead any "reasonable expectation of privacy regarding technical information (such as IP addresses, device IDs, or Android version identifiers) or app usage information (such as what features a user uses, and when) that Defendant allegedly collected, or why collection of that information . . . constituted an "egregious breach of [] social norms");[2] *Khamooshi v. Politico LLC* ("*Khamooshi II*"), 2025 WL 2822879, at *2-4 (N.D. Cal. Oct. 2, 2025) (collection of IP addresses, browser and device data, browsing activity, geolocation information, device type, browser type, and device fingerprints insufficient to allege a concrete privacy injury).[3]

---

[2] This Court also dismissed the plaintiff's claims based on risk of identity theft with prejudice, finding plaintiff's allegation that defendant transmits data "to servers in China, where it is . . . accessible to the Chinese government" insufficient to confer standing, absent allegations "that the information actually has been taken by the Chinese government[.]" *Id.* at *6.

Plaintiffs' conclusory allegations that their data was transmitted to or accessible by Anker and thus subject to disclosure to the Chinese government, *e.g.*, Compl. ¶¶ 9-15, 29-32, 58, 64-67, are likewise insufficient to clear the standing bar. *Ji*, 2023 WL 6466211, at *6; *see also Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (allegations that "TikTok Software gathers data including device and browser information, geographic information, and referral tracking," defendant was able to "deanonymize" plaintiff's data "by matching it with existing [TikTok] data," and plaintiff was unaware her data was "potentially being sent to a foreign government" "insufficient to establish a 'concrete injury' as required to establish standing").

[3] *See also In re USA Today Co.*, 2026 WL 932655, at *1-3 (N.D. Cal. Apr. 6, 2026) (finding allegations defendant embedded third-party trackers to "captur[e] IP addresses and other device information, such as device type [and] browser type" insufficient); *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *2, *5 (S.D. Cal. Feb. 23, 2026) (finding transfer of "search queries related to [plaintiff's] sensitive health information, page navigation history, and metadata [such as] his [IP] address and device identifiers" on public website to third party advertisers insufficient).

Second, Plaintiffs do not adequately plead any economic injury. "The fact that one person benefits another is not, by itself, sufficient to require restitution." *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992); *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004). Thus, to establish standing on such a theory, "Plaintiffs must allege they retain a stake in the profits garnered from [the data allegedly collected] because 'the circumstances are such that, as between the two parties, it is *unjust* for [Fantasia] to retain it.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) (citing *McBride*, 123 Cal. App. 4th at 389; *Perry*, 11 Cal. App. 4th at 1662). Plaintiffs cannot show Fantasia's alleged collection or use of the data at issue here was *unjust*, as they have no legally protected interest in any of the data. *See Khamooshi v. Politico LLC* ("*Khamooshi I*"), 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025) (information, like IP addresses, "which is so commonly shared across the internet . . . cannot reasonably be considered private" or "unjust");[4] *USA Today*, 2026 WL 932655, at *3 (plaintiffs failed to plead protected interest in data collected and thus "fail[ed] to allege any profit earned therefrom was unjust"). Plaintiffs' bare allegations of diminished value and overpayment are also insufficient. *Khamooshi II*, 2025 WL 2822879, at *2-4 (dismissal with prejudice for lack of standing where plaintiffs failed to allege intangible harm or show defendant was unjustly enriched or plaintiffs lost financial value in IP addresses, browser and device data, browsing activity, device type, browser type, or other data); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019); *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 973 (C.D. Cal. 2014).

Third, Plaintiffs fail to adequately allege standing to seek prospective relief. To establish standing for future harm, the risk of harm must be "sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Plaintiffs do not allege any risk has "materialized" or a "sufficient risk of future harm[.]" *Id*. at 437-38. Plaintiffs' bare assertion that they "have a reasonable fear that their confidential communications will continue to be unlawfully recorded if they use the Websites[,]" Compl. ¶ 171, is not enough. *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995 (9th Cir. 2023) (allegations that government's retention of documents allegedly unlawfully seized "'may' have some effect in the future" insufficient);

[4] *See also id*. (distinguishing *In re Facebook*, 956 F.3d at 601, due to "the 'sensitive' and 'personal' nature of the information at issue" there); *cf In re Facebook*, 956 F.3d at 598-601 (addressing sale of combined sets of "users' browsing history [and] personal Facebook profiles[,] that could include a user's employment history and political and religious affiliations").

*Khamooshi I*, 786 F. Supp. 3d at 1183 (plaintiffs' "single-sentence argument that their fear their information will be misused in the future constitutes a concrete injury" insufficient).

Because Plaintiffs fail to allege any concrete injury or risk of harm that is imminent and substantial, all of their claims must be dismissed for lack of standing. *Popa*, 153 F.4th at 795.[5]

## IV. ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY CONSENTED TO FANTASIA'S DATA PRACTICES

Plaintiffs' claims must be dismissed because they consented to the very data collection and sharing they now claim is unlawful.[6] Consent is fatal to all of Plaintiffs' claims.[7]

### A. Plaintiffs Consented To Fantasia's Data Practices.

When assessing consent for tort claims, "California courts are generally guided by the principles outlined in the Restatement (Second) of Torts." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 n.10 (9th Cir. 2024) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1155 (2003)). "[C]onsent 'can be [express] or implied, but any consent must be actual.'" *Id.* at 1147. "Consent is willingness in fact for conduct to occur," which "may be manifested by action or inaction and need not be communicated to the actor." Restatement (Second) of Torts § 892(1). Because consent is assessed under an objective standard, even absent agreement in fact, a person's words, conduct, or inaction may manifest consent sufficient to justify another's reasonable reliance. *Id.* § 892 cmt. c. Thus, "[i]n determining consent, courts consider 'whether the circumstances, considered as a whole, demonstrate

[5] *See also, e.g.*, *Ji*, 2023 WL 6466211, at *4 (dismissing privacy claims based on "user and device identifiers" for lack of standing); *Khamooshi II*, 2025 WL 2822879, at *2-4 (dismissing CIPA §638.51, CDAFA, invasion of privacy, UCL, and unjust enrichment claims with prejudice); *USA Today*, 2026 WL 932655, at *1-3 (dismissing CDAFA, CIPA §638.51, invasion of privacy, UCL, and unjust enrichment claims); *Maghoney*, 2026 WL 497402, at *2, *5 (dismissing ECPA, CIPA §§ 631, 632, 638.51, CDAFA, and invasion of privacy claims).

[6] Courts may consider consent at the pleading stage where consent is obvious on the face of a complaint, documents incorporated therein, or subject to judicial notice. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014); *Timothee v. Meta Platforms, Inc.*, 2026 WL 1130363, at *6-7 (N.D. Cal. Apr. 27, 2026).

[7] Penal Code §§ 631(a) (violation must be "without the consent of all parties to the communication"), 632(a) (same), 502(c)(3) ("without permission"); 638.51(b)(5) (permitting use of pen register and trap and trace device "if the consent of the user of that service has been obtained"); 18 U.S.C. § 2511(2)(d) (interception not unlawful if one party gives prior consent, absent application of the crime tort exception); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) (consent is defense to all privacy torts); Civ. Code § 1780(a); Bus. & Prof. Code § 17204; *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 n.3 (9th Cir. Mar. 5, 2024) (unjust enrichment claim "cannot lie where the defendant has not committed some predicate actionable wrong").

that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization.'" *Calhoun*, 113 F.4th at 1147.[8]

The disclosures on Fantasia's Websites readily satisfy this standard. Upon visiting the Websites, users are presented with a Cookie Banner—a window appearing at the bottom of the webpage offset in white—informing them that the Websites "use cookies and similar technologies" for various purposes, and explaining and providing options, through buttons bolded in black, to either (i) "Accept Only Essential Cookies" which are explained as "strictly necessary cookies that make [the] website work" or (ii) "Accept All Cookies" which will "select all optional cookies." Liu Decl. ¶¶ 4, 5; RJN Exs. A, B. The Cookie Banner also informs users that they can "learn more about the cookies" used on the Websites and "adjust [their] optional cookies settings" by "select[ing] 'Cookie Preferences.'" *Id*. A, B.[9] The Cookie Preferences tool, in turn, discloses: "We and our third-party partners use cookies and other tracking technologies ('cookies') to automatically collect information about your visit to our website" for various purposes, how users can exercise their "opt-out" rights, and directs users to the Website's Privacy Notice, which appeared in bold, underlined, and hyperlinked text, "[t]o learn more about [their] Privacy Rights." Liu Decl. ¶¶ 6, 7; RJN Exs. C, D.[10]

Plaintiffs' conclusory and self-serving allegations that they "did not consent" to the collection or use of their data, *e.g.*, Compl. ¶¶ 65, 98, 100-101, are belied by these disclosures. "If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact." *Perkins*, 53 F. Supp. 3d at 1211–12 (quoting Restatement (Second) of

---

[8] In *Nyugen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014), the Ninth Circuit set forth the standard for determining whether a website user has consented to an arbitration agreement, *which is a question of contract formation*. Some courts have wrongly extended *Nguyen* to consent in the context of data collection on a website in tort cases. *See, e.g.*, *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *15–17 (S.D. Cal. Mar. 12, 2026); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1108–09 (S.D. Cal. 2025); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940–942 (N.D. Cal. 2024).

[9] The Cookie Banner also states: "For more information, you can read our Cookie Notice"—which appears in underlined and hyperlinked text. Liu Decl. ¶¶ 4, 5; RJN Exs. A, B. The Cookie Notice describes the types of cookies employed on the Websites. RJN Exs. E, F.

[10] Notably, these disclosures comply with the California Consumer Privacy Act ("CCPA"), which permits businesses to collect "consumers' personal information" upon disclosure of "the information to be collected and the purposes for which the categories of personal information are collected or used and whether that information is sold or shared[,]" and allow users to "opt out of sale or sharing" of such data. Cal. Civ. Code §§ 1798.100(a)(1), 1798.120(a); *see also* Restatement (Second) of Torts § 892 cmt. d ("In determining whether conduct would be understood by a reasonable person as indicating consent, the customs of the community are to be taken into account. This is true particularly of silence or inaction.").

Torts § 892(2)). Consent may be implied where surrounding circumstances indicate an individual knowingly agreed to the conduct at issue. *See id.* (citing *U.S. v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004)). This inquiry "is determined from the reasonable viewpoint of another person, not from Plaintiff's unexpressed subjective beliefs." *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1112 n.2 (C.D. Cal. 2011) (citing Restatement (Second) of Torts § 892), *aff'd*, 489 F. App'x 155 (9th Cir. 2012).

*Perkins* is instructive. There, the court applied the reasonable user standard to find consent where the defendant's website disclosures were clear, were provided before the allegedly unlawful conduct occurred, and provided users the opportunity to opt out. 53 F. Supp. 3d at 1212–13. So too here: Fantasia's Cookie Banner provides clear notice of its data practices and presents users, including Plaintiffs, a simple mechanism to reject optional cookies by selecting "Accept Only Essential Cookies[.]" RJN Exs. A, B. The Cookie Preferences tool also provides information relating to each category of cookies and allows users to adjust their cookie preferences and submit an online webform to "opt out[.]" *Id.*, Exs. C, D. Although Plaintiffs do not plead which of these options they chose, Plaintiffs allege they "relied on" Fantasia's "marketing materials, the Website, [Fantasia's] Privacy Policy and related policies . . . which . . . induced [them] to purchase [Fantasia's] products." Compl. ¶ 270. This is precisely the kind of informed acquiescence that demonstrates consent. *E.g.*, *Perkins*, 53 F. Supp. 3d at 1212–13.

**B. Fantasia's Disclosures Encompassed The Data Practices Plaintiffs Challenge.**

Fantasia's Websites' disclosures "'explicitly notify' users of the conduct at issue" here. *Calhoun*, 113 F.4th at 1147 (citations omitted). Fantasia's cookie and privacy notices describe *with specificity* the types of data collected from users, how the data is collected and used, and where the data goes. The Cookie Preferences tool and Cookie Notice notify users that <u>cookies will be collected from them by Fantasia *and* third parties and provide details about each category of cookies collected</u>. RJN Exs. C-F. The Privacy Notice discloses, among other things: (1) <u>Fantasia *and* third parties collect users' data through "tracking technologies, including (i) cookies . . . and (ii) other, related technologies, such as web beacons, pixels, [and] embedded scripts</u>," *id.*, Ex. G §§ 1.1, 6.1, 6.1.5, 13.1, 15.1, 15.1.2; Ex. H (same); (2) <u>the specific types of data collected, including "identifiers, such as . . . user ID and online identifiers[,] "[i]nternet and network information, such as . . . IP address[,] and unique identifiers associated with you, your device, or your network[,] [and] Inferences, including consumer preferences</u>," *id.*, Ex. G § 15.1.2,

Ex. H (same); (3) user data is collected and used for advertising and website operations and analytics, and to facilitate customer service, *id*., Ex. G §§ 6.1.5, 13.1, 15.1.2, Ex. H. (same); (4) Fantasia may "combine" and "link" data "collected automatically" from users with information collected from other sources and devices, *id*., Ex. G §§ 1.1, 2, Ex. H (same); and (5) Fantasia "share[s] Personal Data amongst the legal entities that make up the Anker group, for legitimate business purposes and the operation of our Sites, . . . in accordance with applicable law," *id*., Ex. G §§ 6.1.2, 7.1, Ex. H (same).[11]

In short, users of Fantasia's Websites are provided clear, conspicuous disclosures regarding both the existence and scope of Fantasia's data practices and a meaningful opportunity to opt out. RJN Exs. A-H. All users who, like Plaintiffs, proceed to use the Websites, Compl. ¶¶ 85-86, 92-93, thus consent to these data practices. This conduct constitutes objective, implied consent that forecloses Plaintiffs' claims. *Hammerling*, 2024 WL 937247, at *3 n.3 (affirming dismissal of invasion of privacy claims and unjust enrichment claims where "[privacy] policy expressly disclosed Google's intention to track [plaintiff's] activity on third-party apps"); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of intrusion upon seclusion claim based on users' acquiescence to Facebook's disclosure of tracking); *Perkins*, 53 F. Supp. 3d at 1212-14.

## V. PLAINTIFFS FAIL TO STATE A CLAIM UNDER ECPA OR CIPA (COUNTS 1-4)

Plaintiffs attempt to impose extraordinary liability on Fantasia for engaging in routine commercial internet activity under ECPA and CIPA—decades-old wiretapping statutes intended for entirely different technologies and which courts in this district have repeatedly noted are "ill-suited to address modern forms of communication[.]" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002). Plaintiffs' ECPA and CIPA claims should be dismissed.

### A. Plaintiffs Do Not Allege Any Content Was Intercepted While In Transit.

ECPA and Section 631 of the CIPA regulate only the interception of contents of communications while in transit. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (analysis for alleged violation of CIPA is same as under ECPA). Plaintiffs fail to plead either element.

**Contents.** "[C]ontents" means "the substance, purport, or meaning" of a communication. 18

[11] Plaintiffs' references to and admitted reliance on the Privacy Notice confirms this information was not concealed from them. Compl. ¶¶ 73, 270.

U.S.C. § 2510(8); *see also* Penal Code § 631. "'[C]ontents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). The data at issue here (IP addresses, advertising IDs, device IDs, cookie data, full-string URLs[12], referring pages, and device metadata, such as screen resolution, browser version, operating system, and language settings) is not content. *Compare* Compl. ¶¶ 55, 61, 89, 96, 215, 235, *with Zynga*, 750 F.3d at 1107-08 (affirming dismissal; record information like "user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage was sent[,]" information about "the address of the . . . webpage the user was viewing[,]" and IP addresses are not "content").[13]

**In Transit.** ECPA and CIPA also require interception "during" or "contemporaneous with transmission." 18 U.S.C. §§ 2511(1)(a), (d); *see also* Penal Code § 631(a); *Konop*, 302 F.3d at 878 (ECPA). This requirement is not met where, as here, "software intercepts the contents of Plaintiffs' communications in real time and stores the recording"—instead, the contents of the communication must be "read[] or attempt[ed] to [be] read . . . while they are in transit." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025); *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ("the crucial question" is whether defendant "read one of [the] communications while it was still in transit, i.e., before it reached its intended recipient"). "'While' is the key word here." *Torres*, 2025 WL 1135088, at *5 (citation omitted). Plaintiffs do not allege that Fantasia learned or made any "effort at understanding the substantive meaning of [any] communication" while it was in transit. *Id.* Instead, they only complain Fantasia used their data *after* transmission. Compl. ¶¶ 11-14, 116, 123.

Thus, Fantasia cannot be liable under clause two or three of CIPA Section 631(a). Compl. ¶ 150

[12] Plaintiffs' allegation that Fantasia learned their "search queries," Compl. ¶ 154, is insufficient because Plaintiffs "do[] not describe [their] browsing activity, such as what webpages [they] viewed, what buttons [they] clicked, [or] what search terms [they] used." *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025).

[13] Courts routinely grant motions to dismiss finding similar information not "contents." *See, e.g.*, *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084-85 (N.D. Cal. Apr. 18, 2018) ("IP address and unique Lyft driver ID" because "automatically generated"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("IP addresses, locations, browser types."); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, resizing[,] key presses, page navigation"); *Ramos v. Gap, Inc.*, 2025 WL 2144837, at *7 (N.D. Cal. July 29, 2025) ("URLs . . linked (i.e., functioned like an address) to products on Defendant's website").

(citing second through fourth clauses of Section 632); *e.g.*, *Zynga*, 750 F.3d at 1107-08 (not content); *Torres*, 2025 WL 1135088, at *5 (not intercepted in transit); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1122 (S.D. Cal. 2024) (violation under clause three is contingent on violation of clause two).

**B. Plaintiffs Do Not Allege Any "Confidential Communications" Under CIPA § 632.**

CIPA Section 632 applies only to "confidential communication[s]," which are defined as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confided to the parties thereto[,]" not to communications made in a "public" setting or to "any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Penal Code §§ 632(a), (c). "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632[.]" *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (dismissing Section 632 claim based on browser history with prejudice).

**C. Fantasia Was a Party and Consented to the Communications, And The "Crime-Tort Exception" Does Not Apply To Plaintiffs' ECPA Claim.**

ECPA and CIPA provide a complete defense where, as here, the defendant was a party to and/or consented to communication at issue. 18 U.S.C. § 2511(2)(d); Penal Code §§ 631, 632; *In re Facebook*, 956 F.3d at 607 (ECPA and CIPA "contain an exemption from liability for a person who is a 'party' to the communication," and "[c]ourts perform the same analysis for both").[14] However, ECPA provides an exception (the "crime-tort exception") to this general rule if plaintiff pleads and ultimately proves the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or any state." *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *12 (C.D. Cal. Feb. 27, 2025); 18 U.S.C. § 2511(2)(d).

Plaintiffs admit Fantasia was a party and consented to the communications, Compl. ¶¶ 54, 87, 94, 116, but allege that Fantasia's alleged interception of their data is unlawful because it was undertaken for

[14] Plaintiffs' bare allegations that Fantasia aided and abetted unidentified third parties are not sufficient under CIPA. *Compare* Compl. ¶¶ 152, 155, *with Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024) ("defendant cannot be liable for aiding and abetting another party in violation of this clause absent a predicate violation of Section 631(a)'s first three clauses"), *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025) (no violation of Section 631(a) unless vendor read or attempted to read content, "could read" not enough) *and Graham*, 533 F. Supp. 3d at 832-33.

the purpose of a criminal act – the alleged violation of the BDTR. *Id.* ¶¶ 18, 123. Yet, Plaintiffs fail to and cannot plead the "crime-tort exception" applies here because: (i) the BDTR is invalid; (ii) Fantasia's alleged conduct is exempt from the BDTR; and (iii) Plaintiffs fail to plead any violation of the BDTR.

1. <u>The BDTR Is Invalid</u>

The BDTR is invalid because it exceeds the Department of Justice's statutory authority under the enabling statute, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 *et seq.* ("IEEPA"), which expressly prohibits regulation of "information or informational materials." 90 Fed. Reg. 1636-01 (Jan. 8, 2025) (Final BDTR). "[P]arties may always assail a regulation as exceeding the agency's statutory authority in enforcement proceedings against them." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 156 (2025) (including in private putative class action); *see* 5 U.S.C. § 706(2)(A), (C) (courts may determine whether agency action is, *inter alia*, "not in accordance with law" or "in excess of statutory . . . authority"). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires…. [W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, *while ensuring that the agency acts within it*." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024) (emphasis added); *see also Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1341-42 (9th Cir. 1992) (finding improper regulation issued by United States Fish and Wildlife Service narrowing the scope of exemption from Marine Mammal Protection Act of 1972 by redefining terms of the exemption to add additional requirements not contained in statutory definition).

IEEPA grants the President authority to prohibit certain transactions with foreign countries or nationals that pose risks to the national security of the United States. 50 U.S.C. §§ 1701, 1702. However, IEEPA places explicit limits on this power, providing, in relevant part:

> The authority granted to the President by this section **does not include the authority to regulate <u>or</u> prohibit, directly <u>or</u> indirectly** . . . the importation from any country, or the exportation to any country, **whether commercial <u>or</u> otherwise, regardless of format <u>or</u> medium of transmission, of <u>any</u> information <u>or</u> informational materials**, including but not limited to, publications, films, posters, phonograph records, photographs, microfilms, microfiche, tapes, compact disks, CD ROMs, artworks, and news wire feeds.

50 U.S.C. §1702(b)(3) (emphasis added).

The BDTR squarely conflicts with this broad limitation by undeniably regulating and/or prohibiting the exportation of "information or informational materials." Specifically, unless authorized under the exemption or licensing subparts of the BDTR, the Rule prohibits "U.S. person[s], on or after the effective date" from "knowingly engag[ing] in a covered data transaction involving" (1) "data brokerage with a country of concern or covered person" (defined as "prohibited data-brokerage transactions") or (2) "a vendor agreement, employment agreement, or investment agreement with a country of concern or covered person" absent compliance with enumerated security requirements (defined as "restricted transactions"). 28 C.F.R. §§ 202.301, 202.243, 202.401, 202.246. A "covered data transaction" is "any transaction that involves any access by a country of concern or covered person to any government-related data or bulk U.S. sensitive personal data and that involves (1) Data brokerage; (2) A vendor agreement; (3) An employment agreement; or (4) An investment agreement." *Id.* § 202.210. "[B]ulk U.S. sensitive personal data" includes "covered personal identifiers collected about or maintained on more than 100,000 U.S. persons[.]" *Id.* §§ 202.206, 202.249, 202.205(f). "[C]overed personal identifiers" includes "any listed identifier . . . in combination with any other listed identifier" *except*, as relevant here, "[a] network-based identifier . . . that is linked only to other network-based identifier . . . data[.]" *Id.* § 202.212(a)(1), (b)(2). "The term listed identifier means any piece of data in any of the following data fields:

> (a) Full or truncated government identification or account number (such as a Social Security number, driver's license or State identification number, passport number, or Alien Registration Number); (b) Full financial account numbers or personal identification numbers associated with a financial institution or financial-services company; (c) Device-based or hardware-based identifier (such as International Mobile Equipment Identity ('IMEI'), Media Access Control ('MAC') address, or Subscriber Identity Module ('SIM') card number); (d) Demographic or contact data (such as first and last name, birth date, birthplace, ZIP code, residential street or postal address, phone number, email address, or similar public account identifiers); (e) Advertising identifier (such as Google Advertising ID, Apple ID for Advertisers, or other mobile advertising ID ('MAID')); (f) Account-authentication data (such as account username, account password, or an answer to security questions); (g) Network-based identifier (such as Internet Protocol ('IP') address or cookie data); or (h) Call-detail data (such as Customer Proprietary Network Information ('CPNI')).

28 C.F.R. § 202.234.

These provisions of the BDTR, and the BDTR as a whole, plainly and improperly regulate, at minimum, the exportation of information. While "information" is not defined in IEEPA, its common

meaning is broad and includes "facts; data"[15] and "all 'knowledge obtained from investigation, study, or instruction[.]'"[16] Where, as here, "a statute does not define a term, [courts] generally interpret that term by employing the ordinary, contemporary, and common meaning of the words that Congress used." *United States v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010) (citation omitted). Other uses of the term "information" in IEEPA confirm that the term should be construed consistent with its ordinary meaning. *See, e.g.*, 50 U.S.C. §§ 1708(d)(7) (defining "proprietary information" to include "source code" and "data"), 1702(a)(2) ("President may require any person to keep a full record of, and to furnish under oath, in the form of reports or otherwise, complete information relative to any act or transaction referred to in paragraph (1)…"), 1702(c) (permitting in camera submission of "classified information (as defined in section 1(a) of the Classified Information Procedures Act)" in "any judicial review of a determination made under [§1702]"),[17] 1703(b), (c) (requiring President to transmit a report to Congress specifying enumerated "information" "[w]henever the President exercises any of the authorities granted by [IEEPA]"). "[I]dentical words and phrases within the same statute should normally be given the same meaning." *Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 726 (2025) (quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)).

The statutory history of IEEPA further reinforces the textual analysis. As noted, IEEPA expressly denies the President authority to "regulate or prohibit, directly or indirectly . . . the exportation . . . of any information or informational materials[.]" 50 U.S.C. § 1702(b). The exemption for "informational materials" was added to IEEPA in 1988, Pub. L. No. 100-418, 102 Stat. 1371 (1988), and has been construed by some courts, based largely on a single House Report, as "designed to prevent the executive branch from restricting the international flow of materials protected by the First Amendment." *E.g.*, *Kalantari v. NITV, Inc.*, 352 F.3d 1202, 1205 (9th Cir. 2003) (citing H.R. Rep. No. 100–40, pt. 3, at 113 (1987)). Importantly, however, Congress broadened the exemption in 1994 to add the "information"

[15] *See* RJN Ex. P (*Information*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com (last accessed June 1, 2026)).

[16] *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 n.4 (2023) (citing Webster's New Collegiate Dictionary 592 (1975); American Heritage Dictionary 674-675 (1981)).

[17] 18 U.S.C. App. 3 §1(a) ("'Classified information', as used in this Act, means any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security and any restricted data[.]").

exemption, to "expand the exemption's nonexclusive list of informational materials to include new media," and "clarif[y] that the exemption applied to importation and exportation in any 'format or medium of transmission.'" *Id.* (quoting H.R. Conf. Rep. No. 103–482, at 239 (1994)); *see also* Pub. L. No. 103-236, 108 Stat. 474 (1994). "Terms connected by a disjunctive [should] be given separate meanings, unless the context dictates otherwise; here it does not." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Even if the term "informational materials" were construed narrowly, the broader term "information" must be construed to mean something different. *See, e.g*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (citations omitted).

That DOJ attempted to redefine the statutory terms "information or informational materials" in the BDTR to exclude "data that is technical, functional, or otherwise non-expressive," 28 C.F.R. § 202.226, does not change the analysis here. Courts must "hold unlawful and set aside agency action … found to be ... not in accordance with law." *Loper Bright*, 603 U.S. at 391 (quoting 5 U.S.C. § 706(2)(A)). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority[.]" *Id.* at 412. They "begin with the text" of the statute. *City & Cnty. of San Francisco v. EPA*, 604 U.S. 334, 346 (2025). "If the plain language is clear, [the court's] inquiry is complete." *Lopez v. Garland*, 116 F.4th 1032, 1043 (9th Cir. 2024). But even if the language of a statute is ambiguous, "agency interpretations of statutes . . . are not entitled to deference." *Loper Bright*, 603 U.S. at 392, 412 (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 839 (1984)). "[A]gencies have no special competence in resolving statutory ambiguities. Courts do." *Id.* at 400-01. "The very point of the traditional tools of statutory construction . . . is to resolve statutory ambiguities. *That is no less true when the ambiguity is about the scope of an agency's own power—perhaps the occasion on which abdication in favor of the agency is least appropriate.*" *Id.* at 401 (emphasis added).

Because the best meaning of the statutory term "information or informational materials" encompasses the very data the BDTR purports to regulate, the BDTR exceeds the agency's authority and violates IEEPA. Accordingly, Fantasia cannot be found to have intercepted Plaintiffs' data for the

purpose of committing a criminal act in violation of the BDTR because the regulation is invalid.

2. Fantasia's Alleged Conduct Is Exempt From The BDTR

Even if the BDTR were valid, the Complaint does not allege any conduct that is prohibited by the Rule. The BDTR "do[es] not apply to . . . [t]he transfer of personal financial data or covered personal identifiers incidental to the purchase and sale of goods and services (such as the purchase, sale, or transfer of consumer products and services through online shopping or e-commerce marketplaces)." 28 C.F.R. § 202.505(a)(4). The rulemaking record further confirms that the BDTR does not prohibit the transfer of data collected for the purpose of e-commerce activities. *See, e.g.*, 90 Fed. Reg at 1647-48 (explaining § 202.505 exemption is intended to ensure that data brokerage definition does not "inadvertently capture e-commerce activities"); *id*. at 1649 ("Transactions ordinarily incident to the provision of covered personal identifiers and personal financial data as part of e-commerce (such as marketplace sales) are generally exempt under the financial services exemption."); *id*. at 1677-78 (explaining § 202.505 exemption "includes any transaction that is ordinarily incident to and part of the transfer of personal financial data or covered personal identifiers for the purchase and sale of goods and services" and "can apply to a U.S. company operating an online marketplace").

Plaintiffs allege that Fantasia intercepted their "cookie IDs, device IDs, IP addresses, and browser metadata" while they were navigating the Website to "search[] for" and "ultimately purchase[]" products and transferred such data to Anker in China. Compl. ¶¶ 85-97. Plaintiffs' own allegations thus confirm that "[a]s part of operating an online marketplace for the purchase and sale of goods," Fantasia transferred their data "as ordinarily incident to and part of U.S. consumers' purchase of goods on [its] marketplace" and accordingly, "the data transfers are exempt transactions[.]" 28 C.F.R. § 202.505(b)(5).

3. Plaintiffs Fail To Plead Any Violation of the BDTR

Even if the BDTR were valid and the alleged data collection were not exempt, Plaintiffs fail to plead Fantasia's alleged data collection violates the BDTR. Plaintiffs contend Fantasia violated the BDTR by intercepting the following data from them: "IP addresses (28 C.F.R.§ 202.234(g)), advertising IDs (28 C.F.R.§ 202.234(e)), and cookie data (28 C.F.R.§ 202.234(e))[.]" Compl. ¶¶ 135-136. This data does not trigger the BDTR for at least two reasons. First, Plaintiffs' conclusory assertion that Fantasia

collects their "advertising IDs" is not sufficient. Although the BDTR defines "listed identifier" to include "Advertising identifier (such as Google Advertising ID, Apple ID for Advertisers, or other mobile advertising ID ('MAID')," 28 C.F.R. § 202.234(e), "Advertising identifier[s]" are plainly intended to relate to advertising IDs on mobile devices,[18] which Plaintiffs do not allege to have used to access Fantasia's Website. "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 114-15 (2001) (applying *ejusdem generis* to "confine the exemption" in Section 1 of the Federal Arbitration Act, which "excludes from the Act's coverage 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce' . . . to transportation workers").

Second, although IP addresses and cookie data qualify as "listed identifier[s]" under the BDTR, "[t]he term covered personal identifiers excludes . . . [a] network-based identifier . . . that is linked only to other network-based identifier[s]." 28 C.F.R. § 202.212(b)(2). Because IP addresses and cookie data are defined as "[n]etwork-based identifier[s]," *id.* § 202.234(g), Plaintiffs fail to allege a violation of the BDTR sufficient to invoke the criminal purpose exception to the ECPA's one party-consent rule.[19]

Because Plaintiffs fail to adequately plead any other criminal or tortious purpose, their ECPA claim is barred. *See* Compl. ¶ 143; *Saedi*, 2025 WL 1141168, at *13 (inadequately pled intrusion upon

[18] "A MAID is a unique, user-resettable identifier assigned by a device's operating system (iOS, Android, etc.) to a mobile device[.] Apple refers to its MAID on iOS as the Identifier for Advertisers (IDFA). Google refers to its MAID on Android as the Google Advertising ID (GAID)." RJN Ex. L (Cal. Privacy Protection Agcy., *Understanding Mobile Advertising IDs and DROP*, https://privacy.ca.gov/2025/12/understanding-mobile-advertising-ids-and-drop/); *see also, e.g.*, 28 C.F.R. § 202.302(c)(2) (referring to "advertising IDs" on mobile devices); *id.* §202.214(b)(4) (same); BDTR Final Rule, 90 Fed. Reg. at 1638 n.12 (citing Suzanne Smalley, *US Company's Geolocation Data Transaction Draws Intense Scrutiny in Germany*, THE RECORD (July 18, 2024), https://therecord.media/germany-geolocation-us-data-broker, *see* RJN Ex. N (referring to "advertising IDs" as what "the ad industry uses to tailor marketing specific to smartphones"); *id.* at 1638 n.15 (citing Dhruv Mehrotra & Dell Cameron, *Anyone Can Buy Data Tracking US Soldiers and Spies to Nuclear Vaults and Brothels in Germany*, WIRED (Nov. 19, 2024), https://www.wired.com/story/phone-data-us-soldiers-spies-nuclear-germany/, *see* RJN Ex. O (defining "[m]obile advertising IDs" as "unique identifiers used by the advertising industry to serve personal ads to smartphones")); BDTR Notice of Proposed Rulemaking, 89 Fed. Reg. 86116, 86163 (Oct. 29, 2024) (referring repeatedly to "mobile advertising IDs"); BDTR Advanced Notice of Proposed Rulemaking, 89 Fed. Reg. 15780, 15785 (Mar. 5, 2024) (explaining proposed definition of "covered personal identifier" would include "mobile advertising IDs linked to email addresses").

[19] For these reasons, Plaintiffs cannot rely on the BDTR allegations to support any of their claims.

seclusion and invasion of privacy claims cannot serve as tortious purpose); Section VI, *infra*.[20]

**D. Plaintiffs Do Not Allege A Viable CIPA Section 638.51 Claim.**

Apparently recognizing the deficiencies in their content-based claims, Plaintiffs contend, in the alternative, that the Tracking Technologies "Fantasia intentionally programmed and deployed on [its] Websites" are "pen registers" or "trap and trace devices" that recorded or captured its Websites' user's non-content "identifiers" from "the electronic communications transmitted by Plaintiffs' and the Class Members's computers, tablets or smartphones" to the Websites in violation of Section 638.51. Compl. ¶¶ 52-54, 174, 179-183. This claim should be dismissed because user and device identifiers do not give rise to a privacy injury sufficient to confer standing. *Ji*, 2023 WL 6466211, at *4.[21]

It should also be dismissed because Section 638.51 should not be read to criminalize website operators' capture of user identifiers, for multiple reasons. <u>First</u>, the statute's text and legislative history confirm it applies only to devices or processes used to record or capture information from telephonic communications.[22] Begin with the text: Section 638.51 prohibits the installation or use of "a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Penal Code §638.51. But Section 638.52 only authorizes a magistrate to issue a court order to a "peace officer" that specifies, among other things, "[t]he identity, if known, of the person to whom is leased or in whose name is listed *the telephone line* to which the pen register or trap and trace device is to be attached," and "[t]he number and, if known, physical location of the *telephone line* to which the pen register or trap and trace device is to be attached[.]" *Id.* §§ 638.52(d)(1), (3) (emphasis added), 638.53

---

[20] Wiretapping claims also do not suffice. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (criminal or tortious purpose must be independent of and separate from purpose of recording); *Saedi*, 2025 WL 1141168, at *13 (CIPA violation not independent of interception).

[21] Courts routinely dismiss Section 638.51 claims for lack of standing. *See, e.g., USA Today*, 2026 WL 932655, at *1-3; *Maghoney*, 2026 WL 497402, at *2, *5; *Price*, 805 F. Supp. 3d at 1105; *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *1, *3-5 (S.D. Cal. Nov. 3, 2025); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *1-3, *6-7 (C.D. Cal. Dec. 15, 2025); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *1, *3-6 (C.D. Cal. Dec. 29, 2025).

[22] "In interpreting a state statute, a federal court applies the relevant state's rules of statutory construction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 746 (9th Cir. 2013). The "fundamental task" is "to determine the legislative intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning." *Mendoza v. Fonseca McElroy Grinding Co.*, 11 Cal. 5th 1118, 1125 (2021). The statutory language must be examined "not in isolation, but in the context of the statutory framework as a whole to discern its scope and to harmonize various parts of the enactment." *Id*. "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." *Id*.

(allowing oral authorization in some circumstances where there are grounds for issuing order under Section 638.52). The Court must consider these "cross-referenced provisions" when interpreting the scope of Section 638.51. *Larkin v. Workers' Comp. Appeals Bd.*, 62 Cal. 4th 152, 160 (2015). Together, these provisions make clear that a pen register or trap and trace device can only be installed or used on a telephone line—as it is unlawful to install or use either "without first obtaining [such] a court order." Penal Code §§ 638.51(a), 638.52, 638.53; *see Schallert v. Orkin LLC*, 2025 WL 4332757, at *4 (Cal. Super. Ct. Dec. 15, 2025) ("The use of 'telephone line' in [§ 638.52(d)] sharply narrows the scope of the definition of 'pen register' or 'trap and trace device' in the context of this statute.").

The statute's legislative history confirms this reading. *See id.*; *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025); RJN Ex. J (Assemb. B. 929, 2015-2016 Reg. Sess. (Cal. 2015) (as amended June 4, 2015) (Legis. Counsel's Dig.) at 2 ("The bill would clarify that any location information obtained by a pen register or track and trace device is limited to the information that can be determined from the telephone number.")).[23] Section 638.51 should be read to apply only to telephonic communications. *See DeMille v. Am. Fed'n of Radio Artists*, 31 Cal. 2d 139, 156 (1947) ("Penal statutes will not be given application beyond their plain intent. Such acts include only those offenses coming clearly within the import of the language.").

Second, even if Section 638.51 could be read to apply to telephonic *and* internet communications, it "does not prohibit [Fantasia] from collecting identifying information about who [Fantasia] is communicating with and who is communicating with [Fantasia]." *See* RJN Ex. M (*Camacho v. DG Premium Brands LLC*, No. 24STCV21672, at 3 (Cal. Super. Ct. Apr. 17, 2025)).[24] A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."

[23] *See also id.*, Ex. I, Assemb. Comm. on Appropriations, Analysis of Assemb. B. 929, 2015-2016 Reg. Sess. (Cal. 2015), at 1 ("This bill authorizes . . . law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance[.]"), Ex. K, S. Comm. on Pub. Safety, Analysis of Assemb. B. 929, 2015-2016 Reg. Sess. (Cal. 2015), at 10 ("[A] pen register/trap and trace device only records the numbers dialed to or from a particular phone number.").

[24] This interpretation likewise aligns with the legislative intent. *See id.*, Ex. I at 2 ("a 'pen register' . . . allows law enforcement officers to record all outgoing numbers from a particular telephone line" while a 'trap and trace device' . . . allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers").

Penal Code § 638.50(b). "Historically, courts recognized that '[a] pen register is a mechanical device which records the numbers dialed *from* a telephone[.]'" *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *2 (Cal. Super. Ct. Jan. 28, 2025) (emphasis added) (quoting *People v. Blair*, 25 Cal. 3d 640, 654 (1979)). "The analog of the number dialed by a telephone here is the IP address and related information of a website accessed by a computer[.]" *Id.* Plaintiffs do not allege Fantasia collects outgoing information *from* Plaintiffs' devices *to anyone else* and thus have not alleged the use of a pen register. *See id.*[25] Nor do Plaintiffs allege the use of a trap and trace device. A trap and trace device "captures the *incoming* electronic or other impulses that identify the *originating* number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication[.]" Penal Code § 638.50(c) (emphasis added). Plaintiffs allege only that Fantasia collects identifiers from users when they visit its Websites, Compl. ¶ 55, akin to phones recording caller IDs on incoming calls, and thus have not alleged the use of a trap and trace device. *Aviles*, 2025 WL 487196, at *3 (finding this allegation is "the equivalent of if Defendant had used a trap and trace device on its *own* website").

Third, reading Section 638.51 to criminalize the collection of website users' identifiers also cannot be harmonized with the CCPA or common sense. The CPPA plainly permits businesses to collect website users' personal information (including "identifiers such as a . . . unique personal identifier, online identifier, Internet Protocol address, [and] other similar identifiers"), if, *inter alia*, they inform users of "[t]he categories of personal information to be collected and the purposes for which the categories of personal information are collected or used and whether that information is sold or shared" and allow users to "opt out of sale or sharing" of their personal information. *See, e.g.*, Civ. Code §§ 1798.100 (duties), 1798.120 (opt out right), 1798.140 (definitions). If CIPA were read to apply to website operators' collection of the same information, then it would be illegal for them to do so regardless of

[25] As California courts have noted, "[a] pen register does not include a 'process used by a provider or customer of [an] electronic communication service for . . . communications services provided by such provider . . . or other similar purposes in the ordinary course of its business[,]'" and there is no liability when an electronic communication service does so to 'operate, maintain, and test [an] . . . electronic communication service" or to 'record the fact that [an] … electronic communication was initiated or completed[.]" *Garcia v. Diversified Foodservice Supply, LLC*, 2025 WL 4474677, at *3 (Cal. Super. Ct. June 24, 2025) (citing Penal Code §§ 638.50(b), 638.5(b)); *Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal. Super. Ct. June 18, 2025) (finding website operator provider of electronic communication service and thus "obtaining IP addresses from [] user access does not violate the pen register statute").

whether they comply with CCPA, as *CIPA only permits peace officers to obtain a warrant to install or use a pen register or trap and trace device*. Penal Code §§ 638.51, 638.52, 638.53. But "statutes must be harmonized, both internally and with each other, to the extent possible" and "[i]nterpretations that lead to absurd results . . . are to be avoided." *Tuolumne Jobs & Small Bus. All. v. Superior Ct.*, 59 Cal. 4th 1029, 1037 (2014) (citation omitted).

Construing Section 638.51 to criminalize the collection of browser and device identifiers that are *necessary* for the operation of telephones and the internet[26] would undeniably lead to absurd results:

> If CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device. So would every website interaction that identifies electronic information about the user in a manner that allows the website to function. There is no indication that, in enacting the trap and trace device prohibition, the California Legislature meant to cover such devices.

*Heiting v. HP Inc.*, 2025 WL 2993673, at *4 (Cal. Super. Ct. Aug. 1, 2025); *Schallert*, 2025 WL 4332757, at *6 ("[T]he Court cannot conclude that the Legislature *sub silentio* intended to establish a regulatory regime over web tracking through the cryptic reference to a 'trap and trace device' in sections 638.50 and 638.51."), *Garcia*, 2025 WL 4474677, at *3 ("Section 638.51 did not intend to criminalize the process by which all websites communicate with all users who choose to access them."). A "literal interpretation" of a statute should be rejected if it "would result in absurd consequences the Legislature did not intend." *Coal. of Concerned Cmtys., Inc. v. City of Los Angeles*, 34 Cal. 4th 733, 737 (2004).[27] Section 638.51 does not apply here.

---

[26] *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (IP addresses are "provided to and used by Internet service providers for the specific purpose of directing the routing of information"); *United States v. Morel*, 922 F.3d 1, 9 (1st Cir. 2019) ("an internet user generates the IP address data…only by making the affirmative decision to access a website") (citation omitted).

[27] At minimum, that other courts have found Section 638.51 could apply in this context and/or is ambiguous, *see, e.g.*, *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 936-37 (N.D. Cal. 2026); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024), warrants construing the statute in Fantasia's favor. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.9 (2004) (courts "must interpret any ambiguity" in defendant's favor "in a criminal or noncriminal context"); *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1329 (2009) ("When language of a criminal statute is reasonably susceptible of two interpretations, the rule of lenity ordinarily supports an interpretation of that language favorable to a party who may be subject to criminal prosecution or penalties.").

Notably, the applicability of Section 638.51 to internet communications is currently before the California Court of Appeal in *Variety Media, LLC v. Superior Court*, No. B350578 (Cal. Ct. App.).

## VI. PLAINTIFFS FAIL TO ALLEGE INVASION OF PRIVACY OR INTRUSION UPON SECLUSION CLAIMS (COUNTS 6-7)

Plaintiffs' allegations do not meet the "high bar" for invasion of privacy or intrusion upon seclusion claims. *Low v. LinkedIn Corp.*, 900 F. Supp 2d 1010, 1025 (N.D. Cal. 2012); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Courts "consider [these claims] together and ask (1) whether there is a reasonable expectation of privacy, and (2) whether the intrusion was highly offensive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). The answer to both is no.

First, "there is no reasonable expectation of privacy when the data collection is within the users' common-sense expectation or when the information is not sensitive." *Id*. at 1089. Internet users have no reasonable expectation of privacy in the types of data here. *Ji*, 2023 WL 6466211, at *9. "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). "Most of us understand that what we do on the Internet is not completely private"; when "browsing and using . . . public website[s]" "[w]e recognize, if only intuitively, that [the] data has to be going somewhere." *Thomas v. Papa John's Int'l, Inc.*, 2024 WL 2060140, at *1-2 (S.D. Cal. May 8, 2024) (citation omitted), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025).

Second, "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (quoting *Low*, 900 F. Supp. 2d at 1025, collecting cases); *see also Popa*, 153 F.4th at 791; Section III, *supra*. These claims should be dismissed. *Hammerling*, 615 F. Supp. 3d at 1090-91; *Papa John's*, 2024 WL 2060140, at *7.

## VII. PLAINTIFFS FAIL TO PLEAD A VIOLATION OF THE CDAFA (COUNT 8)

Plaintiffs allege Fantasia violated the CDAFA by "knowingly accessing and without permission taking, copying, analyzing, and using" Plaintiffs' data. Compl. ¶ 247. This claim fails for two reasons. First, only one who "suffers damage or loss by reason of a violation" has statutory standing to sue. Penal Code § 502(e)(1). Plaintiffs have not alleged, as they must, any "damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023). Plaintiffs allege only that Fantasia "caused loss to Plaintiffs" by allegedly "knowingly

accessing and without permission taking, copying, analyzing, and using" Plaintiffs' data (Compl. ¶¶ 247, 250), which is not a cognizable injury under CDAFA. *Id*. at 1020-21 (loss of "IP address information and other identifying information" is not a CDAFA injury). Second, Plaintiffs do not allege the Tracking Technologies overcame any "technical or code based barriers," *Perkins*, 53 F. Supp. 3d at 1217, or "implanted anything on [their] computers," *Heiting*, 709 F. Supp. 3d at 1021 (allegations that trackers collect and transmit data users generate by engaging with website are not sufficient).

## VIII. PLAINTIFFS FAIL TO ALLEGE ANY VIOLATION OF THE UCL OR CLRA (COUNTS 9-10)

Plaintiffs' UCL and CLRA claims fail for multiple reasons. First, to establish standing for Section 17200 and CLRA claims, plaintiffs must show that they personally lost money or property "as a result of the unfair competition." *Bass*, 394 F. Supp. 3d at 1039 (citation omitted). Plaintiffs' conclusory allegations that they purportedly overpaid and suffered some undefined "diminution in value" and "loss of valuable personal data," Compl. ¶ 271, are plainly insufficient. *See* Section III, *supra*; *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008) (no injury where plaintiff paid and received product in exchange); *Bass*, 394 F. Supp. 3d at 1040 (users' data has "no economic value to plaintiff [and cannot] establish that plaintiff has personally lost money or property"). "It is not enough to merely say the information was taken and therefore it has lost value." *Id*.

Second, Plaintiffs fail to adequately plead essential elements of their UCL and CLRA claims. To state a claim under the "unlawful" prong of the UCL, Plaintiffs must plead a predicate violation of the law. *Lopez v. Wash. Mut. Bank, FA*, 302 F.3d 900, 907 (9th Cir. 2002). Plaintiffs have not done so. *See* Sections IV-VII, *supra*. Nor have they pled "unfair" conduct, as those allegations are also predicated on the purported "interests protected by the statutes identified[.]" Compl. ¶ 258. The UCL claim is thus duplicative of Plaintiffs' faulty statutory claims and must be dismissed. *See Pac. Steel Grp. v. CMC Steel Fabricators, Inc.*, 2023 WL 6186679, at *7 (S.D. Cal. Mar. 10, 2023). The CLRA claim fails because Plaintiffs do not identify any misrepresentation Fantasia made, much less the "when, where, and how" they were purportedly deceived, as required by Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (Rule 9(b) applies to CLRA claims that "sound in" or are "grounded in fraud"

including nondisclosure claims).[28] Nor could they. The "Privacy Policy and related policies" that Plaintiffs contend "induce[d] consumers to purchase [Fantasia's] products" and on which they "relied," Compl. ¶ 270, plainly disclose the very facts Plaintiffs claim they omit. *See* Section IV, *supra*.

Having admittedly "relied" on representations in these policies, Compl. ¶ 270, Plaintiffs cannot have suffered any injury because of Fantasia's conduct. Civ. Code § 1780(a); *see also* Section III, *supra*.

## IX. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT 5)

As an initial matter, "in California, there is not a standalone cause of action for 'unjust enrichment[.]'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing cases). But even if there were, "because [P]laintiff[s] ha[ve] not stated a claim against [Fantasia] for any unlawful conduct," they "also failed to state an unjust enrichment claim." *Crano v. Sojern, Inc.*, 2025 WL 2689267, at *9 (N.D. Cal. Sept. 19, 2025) (citation modified); *see* Sections III-VIII, *supra*. Plaintiffs' unjust enrichment claim also fails because Plaintiffs (i) do not lack an adequate remedy at law, *see In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014), as they plainly seek actual, compensatory, and statutory damages, Compl. ¶¶ 145, 146, 159, 172, 189, 251; and (ii) fail to allege that Fantasia retained any *unjust* benefit at their expense. *See* Section III, *supra*.

## X. CONCLUSION

Fantasia respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice as amendment would be futile. *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013).

Dated: June 1, 2026

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: /s/ Ashley Vinson Crawford
Ashley Vinson Crawford
Laura D. Smolowe
Danielle Crockett Ginty
Corey Whitt

Attorneys for Defendant
FANTASIA TRADING, LLC

[28] Indeed, Plaintiffs' claims rest entirely on formulaic recitations of the elements of their claims and "naked assertion[s] devoid of further factual enhancements" that fail even under Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted). For example, Plaintiffs do not identify any misrepresentations Fantasia purportedly made about the characteristics, uses, benefits, standards, quality, grade, or any other facts about their purchased products that they did not have; nor did they identify any rights, remedies, or obligations Fantasia misrepresented. *Compare* Compl. ¶ 268, *with* Civ. Code §§1770(a)(5), (a)(7), (a)(9), (a)(14), (a)(16).